IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YAMILKA ISAURA GONZALEZ, Plaintiff | : | No. 3:25cv416 |
| | : | (Judge Munley) |
| v. | : | |
| SAFETY HOLDINGS, INC., d/b/a SAMBASAFETY US, Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

This case is about a simple question with real consequences: Is Plaintiff Yamilka Isaura Gonzalez a licensed driver? She is. But a consumer reporting agency told a rideshare and delivery platform that she was not. When Gonzalez tried to fix it—on two different occasions—the consumer reporting agency sent her the same two form emails which prompted this litigation.

Defendant Safety Holdings, Inc., doing business as SambaSafety US ("SambaSafety" or "Samba") is a company that checks state driving records and supplies motor vehicle record reports ("MVR reports") to Uber Technologies, Inc. ("Uber"). Gonzalez used Uber's platform as a driver to make deliveries. She moved from Pennsylvania to Florida but kept using her Florida driver's license. Eventually, plaintiff obtained a Pennsylvania driver's license but did not supply Uber with that information. In December 2024, Uber requested an MVR report

from SambaSafety regarding the plaintiff. The MVR report showed that plaintiff's Florida driver's license was no longer valid. Uber deactivated plaintiff's account on its platform after relying on the report and told plaintiff by email that she had to go through SambaSafety to resolve the issue. Gonzalez disputed the MVR report on two occasions and provided SambaSafety with her Pennsylvania and Florida driver's license information. For reasons it pins on the plaintiff, SambaSafety did not correct the record.

Gonzalez's lawsuit asserts claims against SambaSafety for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b) and § 1681i.[1] Section 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure the maximum possible accuracy of consumer reports, and Section 1681i requires consumer reporting agencies to conduct a reasonable reinvestigation upon receiving a consumer dispute. SambaSafety now moves for summary judgment arguing that the plaintiff has insufficient proof to get to a jury on those claims. After review of the summary judgment record, the court will grant the motion as to Gonzalez's § 1681e(b) claim and deny the motion as to the § 1681i claim.

[1] The FCRA authorizes suit in a United States district court under 15 U.S.C. § 1681p. The court has jurisdiction pursuant to 28 U.S.C. § 1331.

**Background**

SambaSafety works with state motor vehicle departments in all 50 states.[2] (Doc. 26, SOF ¶ 3). They supply MVR reports to Uber pursuant to a contract "in connection with individuals who seek to use or continue to use Uber mobile apps as earners []." (Doc. 35-1 at ECF p. 4). Pursuant to the contract between Uber and SambaSafety:

> An MVR Report shall consist of a driving record report retrieved from the state Department of Motor Vehicles (or equivalent office) for the current state of licensure of the Candidate and/or other prior states of licensure, as provided by Uber or identified by Samba, and a comprehensive evaluation of all report(s). Samba shall store all identified or provided licenses for as long as legally permissible and use those licenses in any subsequent MVR Reports prepared for Uber under this [statement of work].

Id.[3]

Additionally, the contract calls for SambaSafety to display driver's license information from a primary license (and any secondary licenses when possible)

---

[2] Unless otherwise noted, this factual background derives from the paragraphs of SambaSafety's statement of material facts ("SOF"), (Doc. 26), filed pursuant to the Rules of Court for the Middle District of Pennsylvania ("Local Rules"), which were either explicitly admitted by Gonzalez in her response to the SOF ("RSOF"), (Doc. 31), or are uncontroverted. Where plaintiff failed to controvert a properly supported factual assertion in SambaSafety's SOF, the court deems that fact admitted. FED. R. CIV. P. 56(e)(2); M.D. PA. L.R. 56.1. The court construes all facts in a light most favorable to Gonzalez as the non-moving party. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 187 (3d Cir. 2015).

[3] SambaSafety appears to refer to "MVRs" as driving record reports coming from state DMVs. (See e.g., Doc. 26, SOF ¶¶ 6, 21–22). The court refers to "MVR reports" as defined by Uber and SambaSafety in the contract—driving record from the state(s) plus SambaSafety's evaluation of the driving record(s) pursuant to Uber's criteria. (Doc. 35-1 at ECF p. 4).

on the MVR report including issue date, original issue date, and expiration dates, along with license type, status, and class. Id. at ECF p. 5. Under these specifications, Uber sets criteria for SambaSafety to evaluate the driving record returned by the relevant state departments and generate a score for an adjudication of driving eligibility. Id. at ECF pp. 4–5. The terms of the contract call for SambaSafety to set and communicate status levels, including a status that the MVR report meets or does not meet the requirements specified in listed adjudication criteria. Id. at ECF p. 5. Further, pursuant to the terms of the contract, "[i]n the event that an MVR report has its status revised as a result of a [c]andidate dispute, Samba shall notify Uber in accordance with its standard procedures." Id. at ECF p. 6.

To summarize, SambaSafety pulls raw data from state DMVs, applies Uber's screening criteria, and returns an MVR report to Uber having adjudicated a candidate's eligibility to drive. If a candidate disputes their non-eligibility and wins, SambaSafety notifies Uber.

In order to obtain an MVR report, SambaSafety requires its customers, including Uber, to provide the consumer's driver's license number. (Doc. 26, SOF ¶ 5). When Uber requests an MVR report from SambaSafety, Uber provides a driver's first and last name, driver's license number and state, and

date of birth. Id. ¶ 21. Uber provides SambaSafety with driver's license information supplied by the driver. Id. ¶ 22.

Until 2016, Gonzalez was a resident of the State of Florida and possessed a valid Florida driver's license. Id. ¶ 14. That year, she moved to Pennsylvania. Id. ¶ 15. Gonzalez began driving for Uber in 2019. Id. ¶ 18. Approximately five years later, on April 16, 2024, plaintiff obtained a Pennsylvania driver's license. Id. ¶ 16. On April 17, 2024, plaintiff's Florida driver's license was deactivated.[4] Id. ¶ 17. Uber has no record that plaintiff ever supplied her Pennsylvania driver's license information to use their platform. Id. ¶ 19.

On December 26, 2024, Uber ordered an MVR report from SambaSafety to evaluate Gonzalez's ability to continue driving on Uber's platform. Id. ¶ 27. Uber only provided plaintiff's Florida driver's license number to SambaSafety. Id. ¶ 28. Uber did not provide SambaSafety with plaintiff's Pennsylvania driver's license number. Id. ¶ 29. SambaSafety obtained plaintiff's driving record report from Florida's motor vehicle department that same day. Id. ¶ 30. The data from Florida's motor vehicle department showed that plaintiff's Florida driver's license was deactivated in April 2024. Id. ¶ 31.

[4] SambaSafety maintains that Gonzalez's Florida license expired. (Doc. 26, SOF ¶ 17). Plaintiff contends that her license was surrendered. (Doc. 31, RSOF ¶ 17). The court uses the neutral term "deactivated."

That same day, SambaSafety reformatted the information received from Florida's motor vehicle department and transmitted that data to Uber. Id. ¶ 32. The MVR report indicated a disposition of "exception" and listed an MVR score of 100. (Doc. 35-2 at ECF p. 2). According to Uber's corporate designee, this disposition and score indicated that plaintiff was not qualified to drive with Uber. (Doc. 31-5, B.E. Pierce Dep. 116:5-21).

Gonzalez disputed the MVR report on December 26, 2024 using SambaSafety's online portals. (Doc. 26 ¶ 47). Plaintiff's message to SambaSafety provided, in relevant part:

> Hello, Uber just advised I can [no] longer work after so many years of service . . . Please somebody update my record or please advise where to go to here in PA . . . I changed STATES, not in FL anymore I live in PA, [I] have a Pennsylvania license now[.]
>
> MY DRIVER['S] LICENSE WAS NOT CANCELED/ EXPIRED I just moved to a different state. [S]ee attachment with my old FL [license] along with my current Pennsylvania License.

(Doc. 35-5 at ECF p. 2). Within the portal, Gonzalez submitted her Pennsylvania driver's license number and indicated that Pennsylvania was the issuing state. Id. at ECF p. 3. Photos of her Florida and Pennsylvania driver's licenses were attached as supporting documents. Id. at ECF p. 2.

SambaSafety only searched for Gonzalez's MVR report using her Pennsylvania driver's license number. (Doc. 26, SOF ¶ 51). By implication,

SambaSafety did not look for Gonzalez's MVR report using the Florida driver's license number on her supporting documentation, her name, her date of birth, or some combination of those identifiers. Id. No one from SambaSafety followed up on the reference to a Florida driver's license raised in the dispute.

Approximately 20 days after the dispute was opened, on January 15, 2025, SambaSafety emailed Gonzalez:

> Hello Yamilka,
>
> Thank you for submitting a dispute with Safety Holdings, Inc. regarding your Motor Vehicle Record (MVR). We understand you were informed that a Safety Holdings, Inc. record impacted your insurance or employment. During our investigation, we could not locate an MVR for the driver's license number for the employer or insurance company you provided.
>
> Recommended next steps:
>
> - Review your Adverse Action Notice for other Consumer Reporting Agencies that may have run your MVR.
> - Contact the original source you believe ordered your MVR through Safety Holdings, Inc.
> - Verify the employer/insurance company has your current driver's license number and state of issuance.
>
> Regards,
>
> Safety Holdings, Inc. Compliance Department

(Doc. 35-11 at ECF p. 2).

Plaintiff disputed the accuracy of the MVR report with SambaSafety again on January 18, 2025. (Doc. 26, SOF ¶ 47). She included a photo of her Pennsylvania license as a supporting document. (Doc. 35-5 at ECF p. 6). She inputted her Pennsylvania license number again into the dispute platform. Id. at ECF p. 7. The two disputes were linked together on SambaSafety's end. Id. at ECF p. 3. On February 5, 2025, however, SambaSafety sent Gonzalez the same form email provided above. Id. at ECF p. 8.

Gonzalez never contacted Uber. (Doc. 26, SOF ¶¶ 54, 60, 62). SambaSafety asserts that, if she did, Uber would have ordered an MVR report for the defendant using Pennsylvania information. Id. ¶ 55. Plaintiff contends that the contract between Uber and SambaSafety obligated SambaSafety to provide an MVR report that included her Pennsylvania driving credentials once that state of licensure was identified by the defendant. (Doc. 31, RSOF ¶ 55; see also Doc. 35-1 at ECF p. 4, Specifications).

In any event, Uber sent plaintiff an email on January 10, 2025 with the subject line "Background Check Notification" informing her that she was disqualified from using the Uber app for rideshare requests due to an expired license. (Doc. 35-4). Uber indicated that it made the decision based on a report from SambaSafety.[5] Id. at ECF p. 2. Uber directed plaintiff to contact SambaSafety if the report was inaccurate or incomplete. Id. Uber also provided plaintiff with contact information for SambaSafety. Id. at ECF p. 3. Furthermore, Uber noted, in bold: "If the information in the background check report from [SambaSafety] is accurate and complete, Uber's decision is final at this time." Id.

Gonzalez contends that SambaSafety's false reporting caused her to lose an income-earning source. (Doc. 1, Compl. ¶ 22). Per her testimony, she used Uber's platform to make deliveries, not carry passengers. (Doc. 31-10, Pl. Dep.,

[5] The email refers to SambaSafety using its registered name of Safety Holdings, Inc.

21:15-24). As for other delivery platforms besides Uber, plaintiff testified that she did not earn enough money to continue to use Spark, a delivery company for Walmart. Id., 18:2–19:4. She claims damages for loss of time and money trying to correct SambaSafety's MVR report, harm to her reputation, and emotional distress. (Doc. 1, Compl. ¶ 29).

On March 6, 2025, approximately one month after SambaSafety sent its last form email, Gonzalez filed this FCRA action asserting claims under 15 U.S.C. § 1681e(b) and § 1681i. (Doc. 1). After a period of discovery, SambaSafety filed a motion for summary judgment challenging Gonzalez's proof of the alleged FCRA violations. (Doc. 25). The motion is ripe for disposition.

**Standard of Review**

A movant is entitled to summary judgment "when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law." Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation omitted); see also FED. R. CIV. P. 56(a). "A fact is material if its resolution 'might affect the outcome of the suit under the governing law[,]'. . . [a]nd a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

At this stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. All "facts in dispute," Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 187 (3d Cir. 2015), and all "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation modified). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 84 (3d Cir. 1982). Furthermore, "a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citations omitted).

A motion for summary judgment may also be granted where a moving party demonstrates that the nonmoving party "has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial.'" Mall Chevrolet, Inc., 99 F.4th at 630 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis

removed)). After a moving party carries their burden to show the absence of a genuine, material factual dispute, Rule 56 flips the burden onto "the nonmovant to 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 324 (emphasis removed) (alteration in original)). The non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts.' " Id. (quoting Matsushita, 475 U.S. at 586).

**Analysis**

"The FCRA was crafted to protect consumers from the transmission of inaccurate information about them, and to establish practices that utilize accurate, relevant, and current information in a confidential and responsible manner."[6] Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010) (citation modified); see also 15 U.S.C. § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness[.]"), § 1681(b) ("It is the purpose of [the FCRA] to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of

---

[6] There is no dispute that SambaSafety is a consumer reporting agency within the meaning of the FCRA. See 15 U.S.C. § 1681a(f) (defining that term).

commerce for . . . personnel . . . and other information in a manner which is fair and equitable to the consumer[.]”).

**1. Gonzalez’s 15 U.S.C. § 1681e Maximum Possible Accuracy Claim**

Count I of Gonzalez’s complaint contends that SambaSafety violated 15 U.S.C. § 1681e. (Doc. 1, ¶¶ 31–34). That FCRA provision sets forth the compliance procedures for consumer reporting agencies. It states that “[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.” 15 U.S.C. § 1681e(b); see also TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001).

To prevail on a claim under § 1681e(b), a plaintiff must establish that: “(1) inaccurate information was included in a consumer’s . . . report; (2) the inaccuracy was due to defendant’s failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer’s injury was caused by the inclusion of the inaccurate entry.” Bibbs v. Trans Union LLC, 43 F.4th 331, 342 (3d Cir. 2022) (citation omitted). With the motion for summary judgment, SambaSafety challenges Gonzalez’s proof on each of these elements. The first element, inaccurate information, is a threshold requirement for a § 1681e(b) claim. Id. (citation omitted). Gonzalez does not meet that threshold requirement.

***Accuracy*** – In support of summary judgment, SambaSafety constructs the following argument on the accuracy of the MVR report supplied to Uber:

> Uber requested that SambaSafety provide it with Plaintiff's Florida MVR. SambaSafety then obtained Plaintiff's Florida MVR from the Florida DMV. SambaSafety then faithfully reported to Uber that Plaintiff's Florida driver's license had expired on April 17, 2024. Plaintiff admits, and the Florida DMV record confirms, that her Florida driver's license was discontinued on April 17, 2024. Those facts end this case.

(Doc. 27 at ECF p. 15) (citations to SOF omitted).

This argument is compelling, at least as to the § 1681e(b) claim. In this context, the FCRA specifically "erects a standard of 'maximum possible accuracy[,]'" which "requires more than merely allowing for the possibility of accuracy." Cortez, 617 F.3d at 709. That means there is a "quite dramatic" difference between the concepts of "accuracy" and "maximum possible accuracy" as provided for by statute. Id. For example, if the information in a report "is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." Bibbs, 43 F.4th at 343 (citation modified). Under this standard, a report can be narrowly accurate and still fall short of maximum possible accuracy when it omits information that would change the reader's understanding.

As to a reader's understanding, the Third Circuit applies a "reasonable reader" standard to determine whether an entry in a consumer report is accurate.

Id. at 342 (citations omitted). "A court applying the reasonable reader standard to determine the accuracy of an entry in a report must make such a determination by reading the entry not in isolation, but rather by reading the report in its entirety." Id. "[I]f an entry is inaccurate or ambiguous when read both in isolation and in the entirety of the report, that entry is not accurate under § 1681e(b)." Id.

Under the above standard, summary judgment is warranted in favor of SambaSafety on the § 1681e(b) claim, even when the facts are viewed in a light most favorable to plaintiff. Uber entered into a contract with SambaSafety to evaluate whether candidates could continue to use Uber's platform using criteria which included license status. (Doc. 35-1 at ECF p. 4). Gonzalez had been driving using the Uber platform for at least five years while living in Pennsylvania and using a Florida driver's license for most of that time. (Doc. 26, SOF ¶¶ 14–19). She never supplied Uber with her Pennsylvania license information. Id. ¶ 19. When Uber ordered Gonzalez's MVR report, Uber only possessed her Florida license information, so Uber only asked for information relative to that state. (Doc. 29-5). SambaSafety responded to the inquiry with a report indicating that Gonzalez had an expired license in the State of Florida and adjudicated her ineligible based on Uber's scoring criteria. (Doc. 35-2). From the MVR report, Uber learned that Gonzalez was driving with an expired license

and acted on what it learned, disqualifying her from driving and telling the plaintiff to clear it up with SambaSafety. (Doc. 35-4).

A reasonable reader of the report supplied by SambaSafety would not be misled.[7] A report that correctly provides the status of the only state license SambaSafety was asked to check is both accurate and reported to the "maximum possible accuracy" contemplated by the statute. The question of whether SambaSafety should have checked additional states goes to the reasonableness of its procedures and not to the accuracy of the report it produced. As discussed next, summary judgment is also warranted as to the reasonableness of SambaSafety's procedures in initially pulling Gonzalez's MVR report using her Florida driver's license information.

***Reasonable Procedures*** – For the purposes of Gonzalez's § 1681e(b) claim, "reasonable procedures" are "those that a reasonably prudent person would undertake under the circumstances," and judging the reasonableness of those procedures "involves weighing the potential harm from inaccuracy against

[7] In this action and in response to summary judgment, Gonzalez disputes the accuracy of the MVR report by arguing that her Florida license was "surrendered" and not "expired." (Doc. 32 at ECF pp. 14–15). Although the parties devote substantial effort to the "surrendered" versus "expired" dichotomy and SambaSafety complains that Gonzalez has previously referred to her situation as reporting of an "expired" license throughout the litigation, (Doc. 37 at ECF pp. 13–17), fighting over this granular detail does not get plaintiff's § 1681e(b) claim to a jury. Florida's DMV reported her license as expired and SambaSafety reported that, in turn, to Uber. In the bigger picture, plaintiff also has no evidence that Uber would have let her use its platform with a report of a "surrendered" Florida license versus an "expired" Florida license.

the burden of safeguarding against such inaccuracy." Cortez, 617 F.3d at 709 (quoting Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996)). The reasonableness of a consumer reporting agency's procedures is usually "a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." Id. (citation omitted).

Here SambaSafety's procedures in generating the original MVR report were reasonable beyond question. Uber asked for an MVR report using Gonzalez's Florida driver's license information because that was all the information Uber possessed. Plaintiff does not contend that SambaSafety was required to obtain or report a Pennsylvania driving record not requested by Uber. (Doc. 32 at ECF p. 21 n.8). Rather, she argues that SambaSafety could have done "[m]inimal diligence, such as reconciling the reported expiration date with the issuance date and date of birth, or making a simple inquiry, [which] could have revealed that Plaintiff's Florida license had been surrendered upon issuance of a Pennsylvania license, not expired." Id. at 21. Plaintiff does not propose what that "simple inquiry" might look like and she has no evidence that further digging would have revealed the existence of a Pennsylvania driver's license absent plaintiff supplying that information, which is a matter the court will take up next. Consequently, the motion for summary judgment on plaintiff's § 1681e claim will be granted.

### 2. Gonzalez's § 1681i Reasonable Reinvestigation Claim

The FCRA also provides procedures that consumer reporting agencies like SambaSafety must follow when a consumer disputes the accuracy or completeness of information in their file. 15 U.S.C. § 1681i. "After a credit reporting agency receives a notice pursuant to § 1681i(a)(2) disputing the completeness or accuracy of information provided by the agency, 'the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.'" Bibbs, 43 F.4th at 339 (quoting 15 U.S.C. § 1681i(a)(1)(A)). The provisions of § 1681i contemplate "the completeness" of any item of information contained in a consumer file, 15 U.S.C. § 1681i(a)(1)(A), unlike § 1681e, which does not reference the words "complete" or "completeness."

Accuracy and reasonable procedures are also elements of a Section 1681i claim. Bibbs, 43 F.4th at 344–45. Without a showing that the reported information was inaccurate, a claim brought under § 1681i must fail. Id. at 344 (citation omitted). But as with Section 1681e(b), "information that is technically accurate but materially misleading is sufficient to trigger § 1681i(a)." Id. at 345. And as the court indicated above, the reasonableness of an investigation is

normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question. Id. at 340 (citing Cortez, 617 F.3d at 709).

The factual record supports Gonzalez's § 1681i claim going to a jury. At the reinvestigation stage, a consumer reporting agency must "review and consider all relevant information submitted by the consumer . . . with respect to such disputed information." 15 U.S.C. § 1681i(a)(4). In her dispute dated December 26, 2024, plaintiff supplied her Pennsylvania license number and photos of her Pennsylvania and Florida driver's licenses. (Doc. 35-5 at ECF p. 2). She identified the specific error, explained why the report was inaccurate and incomplete, and handed SambaSafety all the information it needed to verify that she was a licensed driver. Id. According to SambaSafety, its employees could not locate the MVR report because Gonzalez inputted her Pennsylvania driver's license number into its webform. (Doc. 26, SOF ¶¶ 51–52, 58). But a reasonable jury may find it unreasonable for SambaSafety to have just searched by that number in its system and then called it a day after no results were found (on two different occasions).[8] A jury may determine that a reasonable procedure

[8] The court will deny SambaSafety's motion for summary judgment on the issue of whether it willfully violated 15 U.S.C. § 1681i. See 15 U.S.C. § 1681n (providing for punitive damages, attorney's fees and costs for willful violations of the statute). Willful violations of the FCRA encompass knowing violations of the statute as well as reckless violations of the statute. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007). To proceed, Gonzalez must possess evidence that SambaSafety acted with "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. at 68 (citations omitted). Under the FCRA, "a consumer reporting agency may terminate a reinvestigation of information disputed by a

would have been to view plaintiff's Florida driver's license number on the photo she submitted and then run a search using that number in its system. Or a jury may believe that reasonable procedures would include SambaSafety using a system where it could locate all MVR reports it generated for a person named Yamilka Gonzalez.

The court is also not persuaded by SambaSafety's argument that Gonzalez should have reached out to Uber to resolve her dispute, which it argues would have mitigated her damages. (Doc. 27 at ECF p. 25). Uber's email to plaintiff told her to challenge her disqualification with SambaSafety. (Doc. 35-4 at ECF pp. 2–3). SambaSafety's form emails told plaintiff to "Contact the original source you believe ordered your MVR through Safety Holdings, Inc[,]" i.e., go back to Uber. (Doc. 35-11 at ECF p. 2). A reasonable jury evaluating such evidence may see SambaSafety's procedures as presenting the plaintiff with an infinite loop of rigmarole when she just wanted to earn money making deliveries with

consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A). Gonzalez has evidence that she provided SambaSafety with information about her Pennsylvania and Florida driver's licenses that was ignored after 20 days of it sitting in a dispute resolution queue. The question of whether SambaSafety's conduct was willful must be decided by a jury.

Uber using her valid driver's license.[9] SambaSafety is therefore not entitled to summary judgment on plaintiff's § 1681i claim.

**Conclusion**

For the reasons set forth above, SambaSafety's motion for summary judgment will be granted with respect to Gonzalez's claim under 15 U.S.C. § 1681e and will otherwise be denied. An appropriate order follows.

**Date:** 10/23/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**

[9] The court is also not persuaded that plaintiff's failure to make deliveries using a different platform sinks her § 1681i claim. Plaintiff testified that Uber was more lucrative than other apps and that she was spending more on gas than she was making when she was using a different platform. (Doc. 31-10, 18:2–19:4, 76:4-22). Plaintiff's credibility must be weighed by a jury as to her damages.